El Pueblo, Apelado, *v.* Guzmán, Apelante.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 497.—Resuelto en febrero 4, 1913.

Derecho Penal—Alteración de la Paz—Revólver—Elementos del Delito.—
Para que constituya delito el sacar o mostrar un arma mortífera, de acuerdo con el artículo 370 del Código Penal, es necesario que se haga en forma violenta, colérica y amenazadora, en presencia de dos o más personas. Tales elementos no existen en el caso de autos.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogado del apelante: *Sr. Santiago Vivaldi Pacheco.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

La denuncia en este caso se presentó en la Corte Municipal de Añasco, y, copiada en lo pertinente, dice así:

"Que en la mañana del día 19 de agosto de 1912, y en el Círculo de Latinos y Americanos de Añasco, del Distrito Judicial Municipal de Añasco, P. R., el referido acusado, sin que fuera un caso de necesaria defensa propia, sacó en presencia de cinco personas que allí se encontraban reunidas, un arma mortífera en actitud violenta, colérica y amenazadora."

El acusado fué condenado en la corte municipal y apeló para ante la de Distrito de Mayagüez. Celebrado en ésta el nuevo juicio que ordena la ley, fué también condenado el acusado como autor del delito previsto y calificado en el artículo 370 del Código Penal, y apeló entonces para ante esta Corte Suprema.

El apelante no compareció al acto de la vista del recurso, pero presentó por medio de su abogado un informe escrito, en el que alegó que la prueba practicada no sostiene el hecho imputado en la denuncia al acusado. El Fiscal, por escrito y oralmente, se opuso a la revocación de la sentencia apelada.

Forma parte de los autos una exposición del caso debidamente certificada por el juez sentenciador, y en ella se incluye toda la prueba practicada en el nuevo juicio celebrado en la corte de distrito, consistente en las declaraciones de varios testigos. La más importante y completa de dichas declaraciones, dice así:

"Me llamo Manuel Antonio Guzmán; soy agricultor propietario y vivo en Añasco, en cuyo pueblo estaba el día 19 de agosto, en el Círculo Latino-Americano, donde se celebraba un baile. Conozco a José N. Guzmán, a quien ví esa noche en el baile. La noche a que se refiere la denuncia, formaba parte yo de una comisión de festejos en el Círculo Latino y Americano; entre diez y once el presidente, al retirarse, me dejó encargado del orden; como entre una y dos de la mañana, estaba yo en el salón del billar y entró José N. Guzmán con un revólver; fuí donde él y le dije que me hiciera el favor de entregarme el revólver; me dijo que no, y traté de quitárselo y entablamos una lucha por quitárselo. El entró con el revólver en la mano; no subió por la escalera con el revólver en la mano, sino que entró al salón del billar, entraba del otro salón al salón del billar, de la cantina. Al cruzar la puerta que comunica los dos salones, le ví el revólver en la mano, pero venía tranquilo; entró y me fuí detrás y le dije que me entregase el revólver; él llevaba el revólver así en la mano; cuando él entró no estaba más que él y yo; el revólver era uno así como el que se me presenta, de cabo negro, pero no puedo precisar si es el mismo. La actitud del acusado era tranquila, no peleaba con nadie ni conmigo tampoco, ni tuvo cuestión allí ninguna, y después, cuando le pedí el revólver dos o tres veces, insistí en quitárselo y me dijo que no me lo

daba. Yo era responsable del orden en el casino y tenía atribuciones para no dejar tener un arma. Yo le pedí el arma y viendo que no me la daba, entonces traté de quitársela; le eché mano al revólver, le agarré la mano por la muñeca y el revólver, pero no pude quitárselo. El tenía cogido el revólver con una mano, pero después en la lucha, las dos manos de él y las dos mías. En ese momento no había más nadie allí; después fueron llegando; llegó Urrutia, Dueño y unos cuantos más. Yo no he tenido nunca cuestión con el acusado. A preguntas del Hon. Juez, contestó: No puedo calcular el tiempo que tuvimos de lucha, diez o quince minutos, en lo que llegó la gente. El acusado me hacía resistencia para no darme el revólver, le había dado coraje y estaba violento por no dejárselo quitar. El acusado me decía que no me daba el revólver, que quién era yo para darme el revólver; eso me lo dijo con coraje y mientras él estaba en esa actitud, yo persistía en quitarle el revólver. Cuando nosotros estabamos en esa lucha, llegó Carlos Urrutia, el Doctor Dueño y unos cuantos más y el márshal que ocupó el revólver. Cuando llegaron todas esas personas, todavía tenía el revólver en la mano, y el revólver se lo quitó el márshal.''

Las declaraciones de los otros testigos no contradicen la de Manuel Antonio Guzmán, sino que, por el contrario, la confirman en muchos de sus extremos. El acusado no presentó prueba alguna y la única cuestión a resolver es la de si los hechos tales como resultan de la prueba, son constitutivos del delito previsto en el artículo 370 del Código Penal, que dice así:

''Toda persona que, sin ser un caso de necesaria defensa propia, sacare o mostrare en presencia de dos o más personas, algún arma mortífera, en actitud violenta, colérica y amenazadora, o que de modo ilegal hiciere uso de dicha arma en alguna riña o pendencia, incurrirá en *misdemeanor*.''

Dicho artículo está comprendido en el Título XV del Código que trata de los delitos contra la paz pública, y el fundamento que existe para castigar el hecho a que se refiere independientemente del de portar el arma o del de acometer o agredir con ella, es el de la consiguiente alteración de la paz pública que se produce con la actitud del delincuente al sacar o mostrar en forma violenta, colérica y amenazadora

un arma mortífera, o al usarla en una riña o pendencia, cuando no tiene necesidad alguna para ello.

¿Existen en el caso concreto que investigamos, todos los elementos esenciales del delito perseguido y por el cual se ha castigado al acusado, en cualquiera de sus dos formas?

Tales elementos son:

*Primera forma:*

(*a*) Sacar o mostrar un arma mortífera;

(*b*) En presencia de dos o más personas;

(*c*) En actitud violenta, colérica y amenazadora;

(*d*) Sin ser un caso de necesaria defensa.

*Segunda forma:*

Usar ilegalmente una arma mortífera en alguna riña o pendencia.

A nuestro juicio la prueba practicada no demuestra la existencia de todos los elementos constitutivos del delito en ninguna de sus formas.

Analizando la declaración del testigo Guzmán, que como hemos dicho, es la más completa de todas las prestadas, no puede concluirse que el acusado *sacara o mostrara en forma violenta, colérica y amenazadora* una arma mortífera en la presencia de dos o más personas.

Cuando el acusado entró con el arma en la mano en el salón del billar, lo hizo en actitud pacífica y sólo estaba allí el testigo Guzmán.

Si el acusado hubiera penetrado en el Centro, arma en mano, en actitud violenta y colérica, amenazando dispararla y alterando de tal modo la paz de las personas que allí se encontraban, entonces podría concluirse que había cometido el delito que se le imputó y por el cual fué castigado.

Pero tal hecho no aparece de la prueba y la persistencia del acusado en negarse a entregar su arma voluntariamente, conservándola en su poder en la presencia de varias personas, no puede equivaler, como pretende el Fiscal, al acto de mostrar en forma colérica, violenta y amenazadora en la presencia de dos o más personas una arma mortífera.

Tal vez pudiera deducirse de la prueba que el acusado se violentó al negarse a entregar el arma, pero no hay la más leve manifestación testifical en que aparezca el elemento de la actitud amenazadora, necesaria para la completa perpetración del delito. La ley requiere una actitud *violenta, colérica* y *amenazadora* y el acusado en este caso lo que hizo fué negarse a entregar su arma, sin amenazar a nadie con ella.

Puede que los actos del acusado sean constitutivos de delito, pero tal delito no es el previsto y calificado en el artículo 370 del Código Penal, de acuerdo con las resultancias de la prueba. Y siendo esto así, es necesario concluir que procede el recurso establecido y que la sentencia apelada debe revocarse y absolverse al acusado del delito que se le imputara en esta causa.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y Aldrey.